Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit is admonished to draw a nine and give their attention. The court is now sitting. Please be seated. We're happy to hear your argument in our first case, Mr. Hammer. Good morning, Your Honors, may it please the Court, I'm Stanley Hammer of the North Carolina We represent Timothy Richardson and we are here today on a motion to file an application for a successive or second habeas corpus petition. So today's procedure, what we're looking at today, is section 2244 of 28 U.S.C., which obviously governs the question of successive petitions. And at the outset, I would remind the court, I know the court is well aware, that the standard of review for this court today is whether we make a prima facie showing that we satisfy 2244, or as this court had said in the Williams case in 2003 in the matter of Williams, the sufficient showing of possible merit to warrant further exploration by the district court judge. So whatever decision you make today, the district court judge is going to look at it again if you allow, and we hope you will allow, the successive petition and have to go through the 2244 analysis. So the question today is whether our claims that we've set forth in our brief and our motion amount, have possible merit to warrant further exploration. And as this court said in 2016 in the matter of Hubbard, 919-734, this is a low bar. Your granting the motion is simply the first gate that we have to go through. It doesn't mean we're going to get relief. We hope to, but I remind the court of that standard. It's very important. The claims that we look at today, as set forth in our motion and our brief, are that our client, Mr. Richardson, a capital defendant on North Carolina death row, is ineligible for the constitutionally new law, North Carolina General Statute 2015-247, which is a substantive alteration of the definition of intellectual disability. It's a manner that defines a class which would include Mr. Richardson as intellectually disabled, not subject to the death penalty, because he falls within the class of persons who have an IQ of 70 to 70, more than, between 70 and 75. He has a 73 and 74. Thus, the court must look at, or a trial court must look at, his adaptive functions in determining his intellectual disability. That statute also addresses how adaptive functioning can be determined or looked at, and it has to be through a clinically accepted standard. Claim two, similarly, is that Hall v. Florida likewise requires the court to consider the standard error of measurement, not this court, but a court reviewing the matter. There's certainly possible merit that Hall would apply, and we would offer that, and claim three is that there are new facts, new predicate facts, which allow us to go forward. But I know the court's concerned about B-1, so I would like to go through the statute, frankly. B-1, the issue under B-1 is, is this a prior claim? It's not a prior claim, because if you use the reasoning that Judge Wilkins employed in the Williams case, especially in the second Williams case, which was 2004, Williams, as I recall, there were several PFAs in that case, several petitions for an application to file a second petition. But in the second case, the court analyzed the Williams claim, and what the court said there, and I believe this is very important, he said, the court said, to determine whether a claim is prior, we determine whether it relies on a fact or a legal rule he could have relied upon in his first petition. Well, it's clear in this case that we could not have relied upon the change in the general statute of North Carolina, a substantive constitutional change, and we could not have relied on Hall versus Florida. Now, when we filed our petition in 2008, and when this petition was, when this court ruled in 2012 that it was properly dismissed, and again, of course, we're only looking at the mental retardation, or excuse me, intellectual disability prong of our claim. That's what our new claim goes to. Accordingly, your honors, we say that getting past the B1 issue, if it is an issue, we examine the rest of our claim, or most of our claim, in light of 2244B2, and it's specifically B2A, the question being whether we rely on a new rule of constitutional law made retroactive by the Supreme Court that was previously unavailable. I don't think there's any real question but that Hall was previously unavailable. There is no real question that the North Carolina general statute enacted in 2015, and allowing for a consideration of the standard error of measurement, was unavailable. The question then is, are they retroactive, and they're certainly more than possible. We say there's great merit in the argument that they are retroactive. Hall, unquestionably, altered the class of persons subject to punishment. Well, that gets you to new rule, but that doesn't establish retroactivity by the Supreme Court. Those are two different concepts, you agree, don't you? They are two different concepts. I think, your honor, if I may, I think what gets us to the new rule is that it was not established under pre-existing precedent. Right, and I'm saying, though, even if you are correct on that, it still has to be a new rule that has been made retroactive by the Supreme Court. That's correct, your honor. On collateral review. And the new rule is made retroactive on the Supreme Court, applying the view of five justices in Tyler v. Kane, that you can look logically at several decisions of the court to determine whether it's retroactive. And of course, the question of retroactivity goes to, if it's a substantive rule, it should be retroactive. So we say it is a substantive rule, because using the reasoning that's set forth in Montgomery, which applies Miller as a new rule, and the reasoning set forth in Welch, which applies the Johnson case as a new rule, they look at whether there's a definition of a class of persons who are affected. And in this case, there's certainly a definition of a class of persons affected. Here it would be those who have, who register an IQ between 70 and 75, which would require an examination of clinically acceptable adaptive functioning standards. So Judge Keenan, my point is, and I hope in response to your question, that it becomes new as a result of the decisions of the Supreme Court. Right. And I understand your point on Montgomery, that it's a, even if it's procedural in nature, it's necessary to implement the substantive guarantee. Absolutely. But that still doesn't mean that the Supreme Court has made it retroactive, does it? I understand that you're saying it is substantive, but doesn't the Supreme Court have to either say it's retroactive, or by necessary implication, it's retroactive? Well, I think certainly by necessarily implication, and I would refer to Montgomery, not only for its holding, its general holding regarding the application of Miller, but in our brief, and I believe it's on page 21, 31, I'm going to quote it, because I think it's very important with respect to the retroactivity and the substantive nature of our claim. It's a procedural rule. And what the court says, very importantly in our estimation, Your Honors, is in Montgomery, they're talking about the difference between a procedural rule and a substantive rule. And a substantive rule, as we know, would be retroactive. What do they use as an example? In Montgomery, 136 Supreme Court at 735, the court says, and I quote, it's on page 31 of our brief, importantly, when the Constitution prohibits a particular form of punishment for a class of persons, an affected prisoner receives a procedure through which he can show that he belongs to the protected class. See, for example, Atkins versus Virginia, requiring a procedure to determine whether a particular individual with an intellectual disability, quote, falls within the range of intellectual disability, intellectually disabled defenders about whom there is a national consensus, unquote, that execution is impermissible. Those procedural requirements do not transform substantive rules into procedural ones. They look to Atkins. Mr. Tammer, I'm sorry to interrupt you. Has any circuit espoused the argument you're making now? Your Honor, it's been addressed by the 11th Circuit and the 8th Circuit. The 11th Circuit, in a pair of cases, Henry and Hill, they certainly found there's no question that it was a new rule of constitutional law. That was not a question regarding Hall. They looked at the question of... Did they say it was procedural or substantive? Well, that... They said it... I believe they said it was procedural. They certainly said it was not retroactive. However, in a case we brought to this Court's attention through Supplemental Authority, Smith versus Commissioners, out of the same circuit, footnote 5, it said, that reasoning regarding retroactivity in Hall... It was Hall and Henry, I believe. Excuse me, Hill and Henry. That reasoning is... has called into question, under the portion of Montgomery that I'm reading to you now, in other words, that a procedural rule could be substantive.  And I would also bring this to the Court's attention. I would draw to the Court's attention the cogent dissent of Judge Martin in the 11th Circuit. There are other dissents in the 8th Circuit. Here's my point. The question today, again, is... Is there possible merit to warrant further exploration? You have two or three Circuit Court judges who disagree with this. You have the question that I've alluded to in Montgomery. There is possible merit. We take the position, it's unquestionably true that it's substantive and it's retroactive. But that's not the issue before this Court today. I think there's enough there to get you to the point that you can and should grant order a successive petition. My question really is, if we accept your argument, are we going to create a circuit split? You're not going to create a... There's nothing wrong with that. I just wonder if we're going to do it if we accept your argument. Well, if you accept our argument, I don't know that you create a circuit split because you wouldn't be arguing necessarily whether it is or is not retroactive. You'd be arguing whether there's enough possible merit for us to proceed. So I don't think there's a danger of a circuit split. There's no danger of it being reviewed. I know that's not your concern, but this would not be reviewable by the Supreme Court. So back to the argument. We take the position that under B-2, both Hall and the new statute are new rules of constitutional law, new rules of constitutional law, which are retroactive. And they're applicable. They would make a difference in this case. And I'll entertain any questions regarding that, but that's certainly our position here. We've also taken the position in the brief, and I will not belabor it, that there are other facts that bring this within the third exception under B-2b, that is the factual predicate, and also there's a change in the North Carolina laws, a change. Dr. Hazelrig's new opinion in his affidavit is a change. We say that that would ultimately affect the outcome. And if you eliminated Dr. Hazelrig's testimony, no reasonable fact finder on the record could find that our client is anything other than intellectually disabled because there's no other credible testimony, no other testimony regarding his intellectual disability other than Dr. Ali and Dr. Gorman's testimony that he is intellectually disabled, that he has deficits in 10 areas of adaptive functioning. So we would say he meets the actual innocence test, which was also referred to in Williams, said that AEDPA adopts or effectively adopts Sawyer v. Whitley, as I recall. Thank you very much.  Thank you. I'll go with what we have. Good morning, may it please the Court. Richardson's motion must be dismissed under 2244B1 because he is raising the same claim, intellectual disability, he raised in his first habeas petition. In addition to being barred by 2244B1, the motion also is barred under 2244B2. Under B2A, he is not raising a new claim as required, and Hall and Moore have not been made retroactive to cases on collateral review by the United States Supreme Court. And under B2B, he meets neither the factual predicate or innocence of the underlying offense. The test under B2BII is innocent of the underlying offense, not innocent of the death penalty. In sum, he meets no part of 2244B, even when considered in isolation. However, the strongest and clearest way that it is barred is under B1. In his brief... Now, why is B1 the strongest claim from your perspective? Because it is the same claim, intellectual disability, that he raised earlier in his first habeas petition. You're saying if somebody raised an Atkins claim, they're out. If someone raised an Atkins... Unless they bring an action citing Hall within a year of the decision. They can't rely on Hall and the adaptive functioning aspect of the disability claim. See, what I'm worried about is that your position on that is unduly restrictive, that what you're doing is nobody's going to be able to bring a Hall claim unless they do it within a year. And there can be some valid claims that are brought. I mean, I just don't know why you aren't arguing... why you say that's your best claim as opposed to simply saying the Supreme Court has not made it Hall retroactive. Well, Your Honor... Or you're trying to get a broader ruling from this court. I wasn't trying to get a broader ruling as much as I was just trying to address what I thought was the strongest claim. Although that is not to imply in any way that B2A is a weak claim. It is also, I believe, overwhelmingly clear that he doesn't qualify under that. But as to the Hall... Excuse me. As to the question Your Honor raises, I believe that the position that it's the same claim and that Hall cannot apply is what the Supreme Court said in Chute. Not so much the same claim, but in terms of saying that only cases that were in effect clearly established at the time of the state court ruling could be considered when reviewing it under AEDPA. And that in Chute, Moore and his application of Hall by the lower circuit was found to be error by the Supreme Court. Now... I'm sorry. Say that to me again. What did you just say? In Chute, Moore... Excuse me. In Chute, the circuit court's application of Moore to the Atkins claim and Hall through Moore was found to be incorrect by the Supreme Court. They said only cases that were clearly established at the time the state court did its ruling. Well, doesn't that flip your argument on its ear, though? Because doesn't it then strongly imply that Hall was not dictated by Atkins? I don't know if it flips my argument on my ear because on its ear, Your Honor, because it would seem that if the Supreme Court has not made Hall and Moore retroactive to cases on cloud... Well, that goes to the retroactive point. We're trying to tease out from you. I'm interested in why it isn't a new rule. I mean, what case do you have from the Supreme Court that has a similar old rule and then some new gloss on it or new rule? And you think it's most close to this case where the Supreme Court said this is not a new rule. I'm not arguing that it's not a new rule, but the claim... I thought you were. You said it was your strongest argument. Well, I think, B-1, I'd say it's the same claim. The claim is intellectual disability. In fact, there are subsequent decisions that would be considered if a later claim was brought by a later defendant. Okay, I'll accept that. So it's the same claim. So what I'm asking you for is the closest analogy you have in Supreme Court law that says this is the same. Something has happened, but it's the same claim. Do you understand my question? Yes, ma'am, I do understand what you're asking. And I cannot tell you one standing here. Well, what's the guiding principle? Because, I mean, it depends on how generally you say the first rule is. Don't execute people unconstitutionally. Then every single claim after that, whether it would be Eighth Amendment or due process clause or anything, would not be a new rule, right? Yes, ma'am, but I don't believe that's not what I'm attempting to argue. Atkins made the execution of intellectually disabled defendants unconstitutional. Paul and Moore follow Atkins and alter procedures, for example, standard error of measurement. However, the class is the same of intellectually disabled defendants that are beyond it. Well, in my hypothetical, the class was the same. It was people that were subject to the death penalty. So I'm not trying to trick you. I'm really just trying to understand what this argument is. I mean, you might be right, but you've got to have some sort of principle that you're looking at. No, no, yes, ma'am. I understand that. I guess my principle would be he raised an Atkins claim in 2005. And when he filed his motion for a successive or second habeas petition, again, it's based on Atkins. Okay. So, Mr. Babb, then are you saying that if the Supreme Court came out with a new case next year that said that the cutoff for intellectual disability is a 90 IQ, that you couldn't bring that? That wouldn't be a new rule? That because you brought a claim under Atkins, you were out of luck? Wouldn't that be necessarily what you're telling us today? If the Supreme Court did not make the case retroactive. But see, we're not talking about retroactive. Yes, ma'am. I understand. I understand, Your Honor. The other thing that I think gets. Well, yeah, but could you answer that question? Yeah. I don't know, Your Honor, without going. One thing that in addressing the ruling and to make clear that in the state court ruling on this claim back in 2005 was also that adaptive functioning the defendant, excuse me, Richardson did not meet. An argument that Hall requires that you look at adaptive functioning for IQs that are up to 75. In this case, the judge let all the evidence in at the hearing and ruled on both prongs of the statute, adaptive functioning and intellectual quotient. So here it is not that, oh, the IQ score was the only thing. It was a two-part test under the statute just like it is today under the current statute. But even if this court finds that B-1 does not bar this claim, Hall and Moore are not retroactive to cases on collateral review. Now, in his brief and his argument, Richardson claims that under the language of Welch and Montgomery that Hall and Moore should be retroactive. He infers that, but Shoup states clearly that those cases are not retroactive on collateral review. This court cited Shoup or referred to Shoup in a footnote in the Richardson v. Thomas opinion earlier this year saying there was no error in the federal court's adjudication of the Atkins claim and that Hall would not be considered. Now, under Welch and Montgomery, they do make cases, Johnson and Miller, retroactive. They expressly say it. And there is no corresponding case from the United States Supreme Court that expressly says Hall and Moore are retroactive. And what's more, in Shoup, we see that they are not retroactive. And it can't be that this court—I find it hard to believe that it would be where two cases would allow a successive habeas petition to be filed, but then the district court would be barred from considering them in evaluation of that same claim. And since the Supreme Court has not made them retroactive, then under B-2A, the claim of this motion is also barred. One second, Your Honors. One thing further about Dr. Hazelrigg's affidavit that was mentioned—and his affidavit, Dr. Hazelrigg, at the 2015 proceeding, states that nothing in Hall or current medical developments changes his opinion that Richardson is not intellectually disabled. The fact that a new DSM manual has been produced or there's new tests cannot meet the factual predicate, or else you would be able to avoid second successive quite often, and that can't be the ruling. And as for—I'm sorry, one more thing, Your Honor. And in Preto v. Zook, this court's opinion—this court assumed without deciding that Hall applied retroactively, but this 2015 opinion's open question, because an opinion court states that the Supreme Court had never decided that point, was answered in Shoup. Unless there are any further questions, I ask that you deny and dismiss this motion as it's barred by both B-1 and B-2. One final question, Mr. Babb. Yes, ma'am. You're relying so heavily on Shoup, but Shoup wasn't even addressing the gatekeeping functions of 2244. No, ma'am, it was not. So isn't your reliance somewhat attenuated? I don't believe so, ma'am, and here's why I say— Because I had to pull it out and look at it again out of my file because I thought, wait a minute, this isn't a gatekeeping case. No, ma'am, it isn't, but neither is Welch or Montgomery. In Welch and Montgomery both, they were not looking at the 2244. In fact, those cases were dealing with review of application of Johnson. Of course, now that was 2255 in Welch, which is similar to 2254. And in Montgomery, that was, I believe, directly from— No, ma'am, I'm sorry. That was 2254, I believe, but I'd have to check. But neither one of those were 2244 cases either. And so if the basis for Richardson's argument that Welch and Montgomery, which neither one are 2244 cases, infer that Hall and Moore are retroactive, then surely that must come up short against Shoup, which clearly states they're not, when they're all— But Shoup just said you can't rely on law that wasn't clearly established at the time. Yes, ma'am. It doesn't say anything more than that. Correct, but if it was retroactive, they would be able to consider it. But yes, ma'am, it's not a 2244 gatekeeping case. Neither is Welch. Neither is Montgomery. I don't know if that answers your question, but it's the best argument I can spot. The answer you're offering. Yes, ma'am. Any further questions? Again, I ask that you deny the motion under B1 and B2. Thank you. Mr. Hammer, can we return, when you finally get up there, to the question of whether this is a new rule? So just because you have a new argument doesn't make it a new rule. That's common ground, right? Right. So what makes something a new rule? Do you disagree with this? I found this in some treatise. It was the best thing I found. A ground is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different arguments. You agree with that? I agree with it as far as it goes, but I believe the answer to your question is actually in the Williams cases. And the reason for that is this. The question is not simply whether it's a new rule. The question is whether it's a new rule, and it is a new rule. It's a new rule. Actually, we're using the term new rule, but whether the ground is successive is our question here, right? That's right. And I think that's looking at the B-1 question about a prior claim. To be sure. To be sure. Okay. So that's why I asked you if you disagreed with it. I disagree with it because under Williams, under the cases that have come up, the question is, what is available to the litigant at the time the case is final? Our position here today is the North Carolina statute 2015-247, changing the standard, was not available. Hall was not available. And even if you take out the question of Hall's retroactivity, and we stand on our position that it's retroactive or there's possible merit in that, if you go to the next section of the statute that looks at the predicate fact, looking at the predicate fact, new predicate fact would be that 2015-247, the new statute, sets forth a different clinical standard for adaptive functioning. It sets forth the standard error of measurement. It's unquestionably a constitutional rule effectuating the Eighth Amendment protections. And as we argued before, there would be no reasonable jurist, based on the record, would find anything other than that this client, Mr. Timothy Richardson, is intellectually disabled. Because under the clinical standards, which Dr. Hazelrig, in his affidavit, has essentially cast great doubt, if not disclaimed, the use of the SSSQ as an adaptive functioning test. So how do we, and I don't mean to cut you off there, but Mr. Hammer, how do we factor in the fact that the MAR court did consider evidence of adaptive functioning? How does that impact our analysis? My time's run out, but I'm going to keep going if that's okay. Your Honor, I think that you would factor in the fact that the MAR court considered adaptive functioning. There are several issues that arise from your question. First of all, they considered it under a deficient clinical standard. Even Dr. Hazelrig's affidavit, I believe there were two affidavits, one in which he said he held the same opinion, not a clinically acceptable opinion, but an opinion. But the first affidavit says that the test that he used is called into question in a big way. So that would be the first thing with respect to the adaptive functioning looked at by the state court. I don't want to get into the merits. I know you don't want to either, but I have to address your question. Judge Keenan, one of the things that animated, that drove both the district court and this court in its earlier decisions on our habeas petition with respect to mental retardation, excuse me, intellectual disability, was that North Carolina had a strict cutoff. So no court has reviewed the state court's findings on adaptive functioning. That's a separate question, I know, but I felt compelled to address it because it bleeds into it. But again, I would just close, Your Honor, by saying that I would ask the court to consider the 2244 standards. I would ask the court to consider that these claims could not have been made earlier and to send this back down to Judge Boyle to go through the 2244 analysis. If there are no other questions, I'll take my seat. I appreciate the court's time today. Thank you very much. Mr. Hammer, I understand that you're court appointed. I very much appreciate your efforts. We couldn't do our work without lawyers like you. We will come down and say hello to the lawyers and then go directly to the next case.
judges: Diana Gribbon Motz, Barbara Milano Keenan, William B. Traxler Jr.